## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| In re:<br><br>Thomas James Till<br>d/b/a Till Premium Alfalfa<br><br>        Debtor. | Bankruptcy Case No. 23-60146-MMP<br><br>Chapter 7 |
| KAPITUS SERVICING, INC., AS<br>SERVICING AGENT FOR KAPITUS LLC<br>        Plaintiff,<br>vs.<br><br>THOMAS JAMES TILL, individually and<br>ALFAMAX ANIMAL NUTRITION LLC,<br>        Defendants. | Adversary No. _____ |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT AND FOR DENIAL OF DISCHARGABILITY OF DEBT OWED TO KAPITUS SERVICING, INC., FOR SUCCESSOR LIABILITY, CONVERSION, UNJUST ENRICHMENT, AND OTHER RELIEF**

Kapitus Servicing, Inc., as servicing agent for Kapitus LLC ("Kapitus" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint under Section 523 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") objecting to the dischargeability of a pre-petition debt owed to Kapitus by Defendant, Thomas James Till, individually, and also seeking judgment for conversion, unjust enrichment, fraudulent transfer, replevin, and a determination of successor liability against Thomas James Till, individually and AlfaMax Animal Nutrition LLC under Virginia State law. In support hereof, Kapitus alleges as follows:

## JURISDICTION AND VENUE

1.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2.      This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

4.      If the Court should find that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court pursuant to Fed. R. Bankr. P. 7008.[1]

5.      This Adversary Proceeding is brought in connection with the Chapter 7 case filed by the Debtor as Case No. 23-60146 now pending in this Court.

## PARTIES

6.      Plaintiff, Kapitus is a Virginia Corporation and at all relevant times maintained its offices at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201 and 120 West 45th Street, Fourth Floor, New York NY 10036.

7.      Upon information and belief, Defendant, Thomas James Till ("Debtor/Defendant") is a natural person and is a resident of the State of Texas residing at 1527 County Road 328, Buffalo, Texas 75831.

8.      Pursuant to Debtor/Defendant's Petition, AlfaMax Animal Nutrition LLC ("AlfaMax") is or was a limited liability company duly organized in the State of Texas with a principal office at 524 FM 848, Buffalo, Texas 75831. (Case No. 23-60146, Doc. 1, p.73).

---

[1]      Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Kapitus expressly incorporates any reservation of rights that is incorporated in any Proof of Claim that it files in this matter (the "Proof of Claim").

9.     Upon information and belief, AlfaMax is or was a limited liability company duly organized in the State of Texas with a principal office at <u>1585 County Road 328, Buffalo, Texas 75831</u>.  *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

10.     As more fully detailed below, Kapitus is a secured creditor of Merchant and an unsecured creditor of Debtor/Defendant.

<u>**GENERAL ALLEGATIONS**</u>

11.     Debtor/Defendant filed a voluntary Petition for bankruptcy under Chapter 7 of the Bankruptcy Code on March 21, 2023 ("Petition Date"). (Case No. 23-60146, Doc. 1).

12.     Pursuant to Debtor/Defendant's Petition, Till Premium Alfalfa, LLC ("Merchant") is a limited liability company duly organized in the State of Texas with a principal office at <u>1585 County Road 328, Buffalo, Texas 75831</u>. (Case No. 23-60146, Doc. 1, p. 73).

13.     Upon information and belief, Merchant is or was a limited liability company duly organized in the State of Texas. *See Till Premium Alfalfa LLC TX SOS Search dated June 2023*, **Exhibit 2.**

14.     Upon information and belief, at all times relevant hereto, the Debtor/Defendant was the 100% owner and sole member of Merchant, controlled Merchant, and made all decisions and statements to Kapitus relevant to the issues herein. (Case No. 23-60146, Doc. 1, p. 14).

15.     Debtor/Defendant is an insider of Merchant pursuant to 11 U.S.C. § 101(31)(A).

16.     Upon information and belief, Debtor/Defendant owns at least 49% of AlfaMax. (Case No. 23-60146, Doc. 1, p. 14).

17.     Upon information and belief, Debtor/Defendant is an owner/managing member of AlfaMax. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

18.     Kapitus is a secured creditor of Merchant and an unsecured creditor of Debtor/Defendant with a claim against both in the amount of $163,850.87 (along with additional costs, fees, expenses, and interest) as of the Petition Date pursuant to a Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security Agreement, and Personal Guaranty executed by Debtor/Defendant.[2]

19.     Pursuant to Fed. R. Bankr. P. 4007(c) and the *Notice of Meeting of Creditors* (Case No. 23-60146, Doc. 3), June 20, 2023, is the deadline for the filing of complaints objecting to discharge and for determination of dischargeability of debts.

20.     This Complaint is timely filed.

## SPECIFIC FACTUAL ALLEGATIONS

### A.     Debtor/Defendant's Agreement with Kapitus

21.     On October 15, 2021, Kapitus and Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into a Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security Agreement, Personal Guaranty, Agreement to Arbitrate[3], and Representations and Acknowledgements (collectively, the "Agreement") with Merchant, all of which are attached hereto and incorporated herein as **Exhibits 3 – 8**, respectively.

22.     The Agreement is governed under Virginia law. *See Forward Purchase Agreement*, ¶ 4.5, p. 6, **Exhibit 4**.

23.     Debtor/Defendant signed the Agreement both on behalf of Merchant and as Guarantor. *See Forward Purchase Agreement*, p. 1, **Exhibit 3**; *Sale Terms and Conditions*, p. 8,

---

[2] The claim itemization is as follows:

        Agreement/Contractual Balance: $115,574.00
        Interest @ 10% (Contracted Interest Rate) (From 12/09/2021 to Petition Date): $12,252.12 (plus per diem)
        Default Fees: $2,500.00
        ACH Fees: $875.00
        Attorney's Fees: $29,649.75
        Total Claim $163,850.87

[3] The Agreement to Arbitrate is voluntary.

**Exhibit 4***; Security Agreement*, p. 3, **Exhibit 5;** *Personal Guaranty*, p. 2, **Exhibit 6**; *Representations and Acknowledgements*, p. 2, **Exhibit 8.**

24.     The Debtor/Defendant personally guaranteed Merchant's full performance of all representations, warranties, and covenants under the Agreement. *Personal Guaranty*, **Exhibit 6**.

25.     Under the Agreement, Kapitus purchased all of Merchant's accounts, receipts, contract rights, and other rights to payment arising from or relating to the payment to Merchant through cash, checks, electronic transfers, ACH transfers, credit cards, charge cards, debit cards, prepaid cards, mobile payments (including Apple PayTM and other ACH payments) and other similar payment methods that may accrue to Merchant in the ordinary course of Merchant's Business (collectively, the "Receipts") until the time Merchant paid $126,984.00 (the "Receipts Purchased Amount") in full. *See Forward Purchase Agreement*, p. 1, **Exhibit 3**.

26.     On October 15, 2021, Kapitus funded the Receipts Purchased Amount for the purchase price of $83,655.00 (less origination fees) (the "Purchase Price"). *See Forward Purchase Agreement*, p. 1, **Exhibit 3**; *Merchant Statement of Activity*, **Exhibit 9**.

**B.      Debtor/Defendant's Written Misrepresentations to Kapitus Prior to Entering into and Funding the Agreement**

27.     October 13, 2021, Debtor/Defendant, on behalf of Merchant, applied for financing via an application with Lendio Partners, LLC a third-party vendor working with Kapitus. *See October 2021 Application* (Redacted) **Exhibit 10.**

28.     In the October 2021 Application, Debtor/Defendant represented, in part: Merchant had $57,949.82 in average monthly sales, Merchant had $40,000.00 in credit card transactions per month. *See October 2021 Application* (Redacted) **Exhibit 10**.

29.     Pursuant      to     Debtor/Defendant's      Statement     of    Financial     Affairs,
Debtor/Defendant's gross sales from the operation of a business from January 1, 2002 through
December 31, 2022 was only $391,771.90 or an average of $32,647.65—significantly less than
the average monthly sales represented to Kapitus in support of the Agreement. *See October 2021
Application* (Redacted) **Exhibit 10**; Case No. 23-60146, *Statement of Financial Affairs*, p. 63 of
90, Doc. 1.

30.     After receiving the October 2021 Application, Kapitus provided Debtor/Defendant
the Forward Purchase Agreement (Fixed ACH Delivery), Sale Terms and Conditions, Security
Agreement,   Personal    Guaranty,    Agreement    to   Arbitrate,    and   Representations   and
Acknowledgements outlining the  purchase terms  and  included several representations  and
acknowledgments Debtor/Defendant, both on behalf of Merchant and as Guarantor, was required
to make.

31.     As a threshold step in Kapitus' consideration of whether to purchase a potential
merchant's receipts, Kapitus reviews the Agreement signed by Debtor/Defendant, both on behalf
of Merchant and as Guarantor, that contains certain written representations about both the Merchant
and Debtor/Defendant's financial situation, operational plans, and intentions. Because Kapitus's
funding process is truncated from that of a standard financing institution as is typical for the
alternative financing industry, Kapitus relies heavily upon a Debtor/Defendant's representations
and warranties made both on behalf of Merchant and as Guarantor in the Agreement as a whole,
including, but not limited to, those with the stand-alone Representations and Acknowledgements.
In fact, Kapitus's countersignature to the Agreement and funding are the last steps in the process.

32.     Prior to funding under the Agreement, the Debtor/Defendant executed a Representations and Acknowledgments form ("R&A") pursuant to which the Debtor/Defendant acknowledged and represented to Kapitus, in part, that:

a. Debtor/Defendant was the authorized representative of Merchant;

b. Debtor/Defendant was the authorized signatory on the business bank account;

c. Neither the Merchant or Debtor/Defendant was in arrears on any business or personal loans or other financial obligations, except as previously disclosed to Kapitus in writing;

d. No taxing or other authorities had filed any liens as to Merchant or Debtor/Defendant, nor did Merchant or Debtor/Defendant have any unpaid tax obligations, except as previously disclosed to Kapitus in writing;

e. All information that the Debtor/Defendant provided to Kapitus to obtain financing accurately reflected the current ownership of the Merchant, Merchant's status and/or financial condition of the Merchant.

*See Representations and Acknowledgments*, **Exhibit 8**.

33.     Pursuant to the R&A, the Debtor/Defendant also acknowledged he: "[s]ubmitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute fraud and will subject me and my business to legal action." *See Representations and Acknowledgments*, **Exhibit 8.**

34.     Upon information and belief, contrary to the Debtor/Defendant's representations to Kapitus in the October 2021 Application, in the various financial documents he submitted in support of the application process, and in the R&A the Merchant as well as Debtor/Defendant had been in a precarious financial position for some time.

35.     Upon information and belief, the Debtor/Defendant, both on behalf of Merchant and as Guarantor, made affirmative misrepresentations to Kapitus in the October 2021

Application, which representations Kapitus relied upon in entering into the Agreement with Merchant and funding the Agreement.

36.     Upon information and belief, the Debtor/Defendant, both on behalf of Merchant and as Guarantor, made affirmative misrepresentations to Kapitus in the financial documents submitted to Kapitus, which representations Kapitus relied upon in entering into and funding the Agreement.

37.     Upon information and belief, the Debtor/Defendant, both on behalf of Merchant and as Guarantor, made affirmative misrepresentations to Kapitus in the R&A, which representations Kapitus relied upon in entering into the Agreement with Merchant and funding the Agreement.

38.     Upon information and belief, Debtor/Defendant knew his written representations to Kapitus were false when he made them both on behalf of Merchant and as Guarantor.

39.     Upon information and belief, Debtor/Defendant never intended to honor the Agreement, including the Guaranty.

40.     In reliance on the written representations made to Kapitus by Debtor/Defendant in the October 2021 Application, the Agreement, the financial statements provided by Debtor/Defendant to Kapitus, and the R&A, Kapitus agreed to purchase certain of Merchants' Receipts, as outlined above.

41.     Kapitus reasonably relied on Debtor/Defendant's October 2021 Application, the representations and warranties in the Agreement, the financial statements provided by Debtor/Defendant to Kapitus, and the R&A provided by Debtor/Defendant to Kapitus.

42.     Kapitus would not have funded the Agreement but for Debtor/Defendant's written representations outlined above.

**C.    Debtor/Defendant's Written Misrepresentations to Kapitus in the Agreement**

43.    To allow Kapitus to collect its purchased Receipts, the Agreement required Merchant to use <u>only one</u> account to deposit all Receipts collected by Merchant, which was designated by the parties in the Agreement and fully accessible to Kapitus (the "Account"). *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 3**; *Sale Terms and Conditions*, §§ 1.3, 2.6, pp. 1 & 3, **Exhibit 4**.

44.    The Agreement entitled Kapitus to collect a weekly amount of $1,630.00 (the "Specified Weekly Amount") or in a variable amount equal to 10.0% (the "Specified Percentage") from the Account until such time as Kapitus received payment in full of the Receipts Purchased Amount. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 3**; *Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 4**.

45.    The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *Sale Terms and Conditions*, §§ 1.3, p. 1, **Exhibit 4**.

46.    To avoid disruption, the Agreement prohibited changes to the Account or the designation of Account except with Kapitus' express written consent. *Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 4**.

47.    By entering the Agreement, Debtor/Defendant, both on behalf of Merchant and as Guarantor, made the following written representations, warranties, and covenants to Kapitus[4], among others:

> **II.    REPRESENTATIONS, WARRANTIES AND COVENANTS**.
> Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:

---

[4]    Within the terms of the *Sale Terms and Conditions*: the terms "Seller" or "Merchant" refers to Till Premium Alfalfa, LLC; the term "Purchaser" refers to Plaintiff, Kapitus; the terms Guarantor refers to Debtor/Defendant Thomas James Till.

2.1 **Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership. Purchaser may request statements at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within five (5) business days. Seller's failure to do so is a material breach of this Agreement.

\*\*\*\*

2.3 **Authorization**. Seller, and the person(s) signing the Transaction Documents on behalf of Seller, have full power and authority to incur and perform the obligations under the Transaction Documents, all of which have been duly authorized.

\*\*\*\*

2.5 **Tax Obligations**. Seller is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to Purchaser. No federal, state, or local taxing authority has filed any lien against the assets of the Seller and/or Guarantor. Seller or Guarantor shall pay all taxes owed to federal, state, or local governments when due.

2.6 **Deposit Arrangements and Delivery of Receipts.** Without Purchaser's prior written consent, Seller will not (i) change the account designated for the delivery of Receipts; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on Purchaser debit; (iv) permit any event to occur that could cause diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under

the Transaction Documents. Seller will batch out receipts with all payment processors on a daily basis.

2.7 **Change of Name or Location**. Seller will not conduct Seller's business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser.

\*\*\*\*

2.9 **No Bankruptcy or Insolvency.** Seller is solvent, no transfer of property is being made by Seller, and no obligation is being incurred by Seller in connection with the sale of Receipts with the intent to hinder, delay, or defraud either present or future creditors of Seller. Seller represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Seller. Seller further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

\*\*\*\*

2.13 **Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

\*\*\*\*

2.15. **Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

*See Sale Terms and Conditions*, p. 3-4, **Exhibit 4**. (Emphasis in original).

48.     In executing the Agreement, Debtor/Defendant, both on behalf of Merchant and as

Guarantor, further represented and warranted, in part: "**If any information provided is false or**

**misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations**." *See Forward Purchase Agreement*, p. 2, **Exhibit 3**. (Emphasis in original).

49.     Upon information and belief, the Debtor/Defendant made numerous written misrepresentations to Kapitus in the Agreement, both on behalf of Merchant and as Guarantor, to induce Kapitus to fund the Purchase Price to the Merchant, including, but not limited to, the following:

a.  Misrepresentations regarding the financial condition of Seller/Merchant and Guarantor, Debtor/Defendant and/or omitted material adverse changes in the condition, operation and ownership of the Seller/Merchant (*Sale Terms and Conditions*, p. 3, § 2.1, **Exhibit 4**);

b.  Misrepresentations regarding the Seller/Merchant's current and future compliance with all federal state and local tax laws and obligations (*Id.*, p. 3, § 2.5);

c.  Misrepresented Seller/Merchant would not prevent payment of Kapitus' debits, permit diversion of the Seller/Merchant's receipts, or engaged in actions that had an adverse effect upon Seller/Merchant's obligations under the Agreement (*Id.*, p. 3, § 2.6, **Exhibit 4**);

d.  Misrepresented Seller/Merchant would use one account for the Receipts and prohibited Kapitus from access to its purchased Receipts (*Id.*);

e.  Misrepresented Seller/Merchant would not conduct business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser. (*Id.*, p. 3, § 2.7);

f.  Misrepresented Seller/Merchant was solvent and did not intend to file bankruptcy (*Sale Terms and Conditions*, p. 3, § 2.9, **Exhibit 4**);

g.  Misrepresented Seller/Merchant would use the Purchase Price under the Agreement for business purposes and not as a consumer for personal, family or household purposes. (*Id.* p. 3, § 2.13); and

h.  Misrepresented Seller/Merchant would not (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller/Merchant; or (b) effectuate the suspension, dissolution, or termination or

Seller's business without the express prior written consent of Purchaser (*Id.* p. 4, § 2.15).

50.     The Debtor/Defendant as Guarantor further represented to Kapitus his personal guaranty of performance of the representations, warranties, and covenants made in Agreement and outlined, in part above: "**PERSONAL GUARANTY OF PERFORMANCE**. Each undersigned Guarantor hereby unconditionally guarantees to Purchaser the Merchant's performance of all of the representations, warranties, covenants made by Seller in the Purchase Agreement, the Sale Terms and Conditions, the Security Agreement, Guaranty, and Agreement to Arbitrate…". *See Personal Guaranty*, ¶ 1, p. 1, **Exhibit 6.**

51.     On October 15, 2021, in reliance on the representations, warranties, and covenants made in Agreement by the Debtor/Defendant on behalf of both Merchant and as Guarantor, Kapitus agreed to purchase certain of Merchant's Receipts and funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement.

52.     Kapitus reasonably relied on Debtor/Defendant's representations, warranties, and covenants made to Kapitus as both Merchant and as Guarantor in the Agreement.

53.     Kapitus would not have funded the Agreement but for Debtor/Defendant's written representations made to Kapitus as both Merchant and as Guarantor in the Agreement and outlined above.

54.     Upon information and belief, Debtor/Defendant knew his written representations as both the representative of the Merchant and as Guarantor made to Kapitus, including, but not limited to, those outlined above, were false when he made them.

55.     Upon information and belief, Debtor/Defendant as both the representative of the Merchant and as Guarantor never intended to honor the Agreement.

56. The Agreement also granted Kapitus a blanket lien on Merchant's assets, including but not limited to: all accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chose in action, chattel paper, instruments, inventory, goods, equipment, supplies, furniture, cash, and general intangibles (collectively, the "Collateral"). *See Security Agreement and Guaranty*, p. 1, **Exhibit 5**.

57. Kapitus perfected its lien by filing a Uniform Commercial Code ("UCC") financing statement with the secretary of state for the State of Texas (the "Kapitus UCC-1"). *See UCC Financing Statement*, **Exhibit 11**.

**D. Debtor/Defendant's Undisclosed Paycheck Protection Program Loans for Merchant Demonstrate Money Obtained from Kapitus by False Pretenses, False Statements, or Actual Fraud**

58. Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS**.
> Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> ****
>
> **2.1** **Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor… fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates…Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser.

*Sale Terms and Conditions*, p. 3*, § 2.1, **Exhibit 4**.

59.     Prior to funding under the Agreement, the Debtor/Defendant also made the following representations and acknowledgments to Kapitus as both Guarantor and on behalf of Merchant:

> ¶ 11.   All information that I provided to Kapitus to obtain financing for my business accurately reflects the … financial condition of my business.

*See Representations and Acknowledgments*, ¶ 11, p. 1, **Exhibit 8**.

60.     On October 15, 2021, in reliance on the representations, warranties, and covenants made by the Debtor/Defendant, as Guarantor and on behalf of Merchant, in the R&A and the Agreement, Kapitus funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement. *See Merchant Statement of Activity*, **Exhibit 9**.

61.     Upon information and belief, Debtor/Defendant, on behalf of Merchant, applied for and received a Paycheck Protection Program Loan. *See Merchant's PPP Summary dated June 2023,* **Exhibit 12**.

62.     Upon information and belief, Merchant, received a Paycheck Protection Program Loan in or around April 2020. *See Merchant's PPP Summary dated June 2023,* **Exhibit 12**.

63.     Upon information and belief, in total, Merchant received $22,300.00 in Paycheck Protection Program Loan in or around April 2020. *See Merchant's PPP Summary dated June 2023,* **Exhibit 12**.

64.     Upon information and belief, Merchant's Paycheck Protection Program Loan existed at the time Debtor/Defendant, on behalf of Merchant, applied for funding from Kapitus in October 2021 and when Debtor/Defendant submitted the financial statements in support of the same.

65.     Debtor/Defendant, on behalf of Merchant and as Guarantor, did not disclose the Merchant's Paycheck Protection Program Loan to Kapitus at the time the Agreement was being negotiated or entered into in violation of the Sale Terms and Condition (as outlined above). *Sale Terms and Conditions*, p. 3*, § 2.1, **Exhibit 4.**

66.     Debtor/Defendant, on behalf of Merchant and as Guarantor, did not disclose the Merchant's Paycheck Protection Program Loan to Kapitus at the time the Agreement was being negotiated or entered into in violation of R&A (as outlined above). *See Representations and Acknowledgments*, ¶ 11, p. 1, **Exhibit 8**.

67.     Consequentially, the financial information provided by Debtor/Defendant to Kapitus did not properly reflect the Merchant and/or Debtor/Defendant's financial condition at the time the time the Agreement was being negotiated and entered into.

68.     Upon information and belief, Debtor/Defendant, as Guarantor and on behalf of Merchant, intentionally misrepresented the Merchant and/or Debtor/Defendant's true financial obligations, and, therefore, Merchant and/or Debtor/Defendant's financial condition, to Kapitus at the time the Agreement with Kapitus was being negotiated and entered into to induce Kapitus to provide funding, which representation and warranties Kapitus reasonably relied upon in funding Merchant.

69.     Kapitus would not have entered the Agreement with Merchant had Kapitus known of Debtor/Defendant and/or Merchant's true financial obligations and financial condition and prior financing.

70.     Kapitus would not have funded the Purchase Price under the Agreement but for Debtor/Defendant's written representations as both Guarantor and on behalf of Merchant.

71.     Debtor/Defendant's conduct demonstrates Debtor/Defendant obtained money from Kapitus by false pretenses, false statements, or actual fraud.

**E.     Debtor/Defendant's Undisclosed Tax Obligations Demonstrate Money Obtained from Kapitus by False Pretenses, False Statements, or Actual Fraud**

72.     Prior to funding under the Agreement, Debtor/Defendant, as Guarantor and on behalf of Merchant, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

> **II.     REPRESENTATIONS, WARRANTIES AND COVENANTS**.
> Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> ****
>
> **2.5 <u>Tax Obligations</u>**.  Seller is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to Purchaser…Seller or Guarantor shall pay all taxes owed to federal, state, or local governments when due.

*Sale Terms and Conditions*, p. 3, § 2.5, **Exhibit 4**.

73.     Prior to funding under the Agreement, the Debtor/Defendant also made the following representations and acknowledgments to Kapitus as both Guarantor and on behalf of Merchant:

> ¶ 10.  **NO taxing or other authorities have filed any liens, nor do I have any unpaid taxing obligations**, expect as previously disclosed to Kapitus in writing.

*See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 8.** (Emphasis in original).

74.     Upon information and belief, at the time Agreement was being negotiated, Merchant and/or Debtor/Defendant had unpaid and outstanding tax obligations that were not disclosed to Kapitus.

75.     Upon information and belief, Merchant is or was an LLC, and, therefore, any of its tax obligations would have passed through to the Debtor/Defendant, individually.

76.     According to the Debtor/Defendant's Initial Schedules E/F, however, Debtor/Defendant owed the Internal Revenue Service at least $12,000.00 for taxes incurred in 2018. (Case 23-60146, Doc. 1, p. 46).

77.     Upon information and belief, Debtor/Defendant's outstanding tax obligations from 2018 existed at the time Debtor/Defendant, as Guarantor and on behalf of Merchant, signed the R&A stating neither Merchant and/or Debtor/Defendant had any unpaid tax obligations, expect as previously disclosed to Kapitus in writing. *See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 8.**

78.     Upon information and belief, Debtor/Defendant's outstanding tax obligations from 2018 existed at the time Debtor/Defendant, as Guarantor and on behalf of Merchant, entered into the Agreement with Kapitus stating Merchant had paid all taxes due, except as disclosed to Kapitus. *Sale Terms and Conditions*, p. 3*, § 2.5, **Exhibit 4**.

79.     Debtor/Defendant did not disclose Merchant and/or Debtor/Defendant's 2018 unpaid and outstanding tax obligations to Kapitus at the time the Agreement was being negotiated and entered into.

80.     According to the Debtor/Defendant's initial Schedule D, Debtor/Defendant owed the Leon County Tax Accessor at least $12,000.00 for taxes incurred in 2020 secured by property located at 1527 County Road 328, Buffalo, Texas 75831. (Case 23-60146, Doc 1, p. 38).

81.     Upon information and belief, Debtor/Defendant's outstanding tax obligations from 2020 existed at the time that the Debtor/Defendant, as Guarantor and on behalf of Merchant, signed the R&A stating neither Merchant and/or Debtor/Defendant had any unpaid

taxing obligations, except as previously disclosed to Kapitus in writing. *See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 8.**

82.     Upon information and belief, Debtor/Defendant's outstanding tax obligations from 2020 existed at the Debtor/Defendant, as Guarantor and on behalf of Merchant, signed the R&A stating **no taxing or other authorities had filed any liens** as to the Merchant and/or Debtor/Defendant's property, except as previously disclosed to Kapitus in writing. *See Representations and Acknowledgments*, ¶ 10 p. 1, **Exhibit 8.**

83.     Upon information and belief, Debtor/Defendant's outstanding tax obligations from 2020 existed at the time Debtor/Defendant, as Guarantor and on behalf of Merchant, entered into the Agreement with Kapitus stating Merchant had paid all taxes due, except as disclosed to Kapitus. *Sale Terms and Conditions*, p. 3*, § 2.5, **Exhibit 4***.

84.     Debtor/Defendant did not disclose Merchant and/or Debtor/Defendant's 2020 unpaid and outstanding tax obligations to Kapitus at the time the Agreement was being negotiated and entered into.

85.     Debtor/Defendant did not disclose the real property lien filed by the Leon County Tax Assessor related to 2020 unpaid and outstanding tax obligations to Kapitus at the time the Agreement was being negotiated and entered into.

86.     Consequentially, the financial information provided by Debtor/Defendant to Kapitus did not properly reflect the Merchant and/or Debtor/Defendant's financial condition at the time the Agreement was being negotiated and entered into.

87.     Upon information and belief, Debtor/Defendant, as Guarantor and on behalf of Merchant, intentionally misrepresented the Merchant and/or Debtor/Defendant's true tax obligations, and, therefore, Merchant and/or Debtor/Defendant's financial condition, to Kapitus

at the time the Agreement with Kapitus was being negotiated and entered into to induce Kapitus to provide funding, which representation and warranties Kapitus reasonably relied upon in funding Merchant.

88.     Kapitus would not have entered the Agreement or funded the Purchase Price to Merchant had Plaintiff known of Debtor/Defendant and/or Merchant's true tax obligations and financial condition and prior financing.

**F.      Merchant's Insufficient Funds Lead to an Almost Immediate Default Under the Agreement**

89.     On October 15, 2021, Kapitus funded the Receipts Purchased Amount for the Purchase Price to Merchant. *See Forward Purchase Agreement*, p. 1, **Exhibit 3**; *Merchant Statement of Activity*, **Exhibit 9**.

90.     Pursuant to the Agreement, Merchant was required to use only a single, specified depositing account to deposit all Receipts collected by Merchant, which was designated by the parties in the Agreement and fully accessible to Kapitus a/k/a the Account. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 3**; *Sale Terms and Conditions*, §§ 1.3, 2.6, pp.1 & 3, **Exhibit 4**.

91.     The Agreement entitled Kapitus to collect the Specified Percentage of the batch amount of Merchants' Receipts via ACH or the Specified Weekly Amount from the Account through debits from the Account until such time as Kapitus received payment in full of the Receipts Purchased Amount. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 3**; *Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 4**.

92.     The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *Sale Terms and Conditions*, §§ 1.3, p. 1, **Exhibit 4**.

93.    To avoid disruption, the Agreement prohibited changes to the Account or the designation of Account except with Kapitus' express written consent. *Sale Terms and Conditions*, § 1.3, p. 1, **Exhibit 4**.

94.    Merchant, via the Debtor/Defendant, was to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus and failure to do so was a default of the Agreement. *Sale Terms and Conditions*, § 3.1, p. 4, **Exhibit 4**.

95.    On December 9, 2021, Debtor/Defendant, on behalf of the Merchant and as Guarantor, defaulted on the obligations under the Agreement when the December 9, 2021 ACH payment, as provided for in the Agreement, did not clear and was returned to Kapitus, on or around December 14, 2021, due to insufficient funds, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement. *See Merchant Statement of Activity*, **Exhibit 9**.

96.    Between December 14, 2021 and December 29, 2021, three (3) ACH payments did not clear and were returned to Kapitus due to insufficient funds. *See Merchant Statement of Activity*, **Exhibit 9**.

97.    Debtor/Defendant, on behalf of Merchant and as Guarantor, defaulted on his Agreement with Kapitus a mere 56 days after the Agreement was entered into and Kapitus funded the Purchase Price. *See Forward Purchase Agreement*, ¶¶ 7, 8, pp. 1-2, **Exhibit 3**; *Sale Terms and Conditions*, §§ 1.3, 2.6, pp.1 & 3, **Exhibit 4**; *Merchant Statement of Activity*, **Exhibit 9**.

98.    In total, Debtor/Defendant, on behalf of Merchant and as Guarantor, made only seven (7) payments to Kapitus under the Agreement. *See Merchant Statement of Activity*, **Exhibit 9**.

99.     Debtor/Defendant's conduct, on behalf of Merchant and as Guarantor, demonstrates Debtor/Defendant obtained money from Kapitus by false pretenses, false statements, or actual fraud.

### G.     Debtor/Defendant's Closing of Merchant's Business

100.     Debtor/Defendant, on behalf of Merchant and as Guarantor, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS**. Seller and Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> ****
>
> **2.1.** **Financial Condition and Financial Information.** … No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business…Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership…
>
> ****
>
> **2.15.** **Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

*See Sale Terms and Conditions*, pp. 3-4, **Exhibit 4**. (Emphasis in original).

101.     On October 15, 2021, in reliance on the representations, warranties, and covenants made by the Debtor/Defendant, on behalf of Merchant and as Guarantor, Kapitus funded the Purchase Price to Merchant pursuant to the terms and conditions set forth in the Agreement. *See Merchant Statement of Activity*, **Exhibit 9**.

102.     On March 21, 2023, Debtor/Defendant filed a Voluntary Petition under Chapter 7 with this Court (Case No. 23-60146, Doc. 1).

103.     According to Debtor/Defendant's Petition/Statement of Financial Affairs, Merchant has not ceased operations in that no date of closure for the Merchant's business is listed. (Case No. 23-60146, Doc. 1, p. 73).

104.     However, pursuant to the information available via the Texas Secretary of State's Office, Merchant has forfeited its existence/dissolved. *See Till Premium Alfalfa LLC TX SOS Search dated June 2023*, **Exhibit 2.**

105.     Despite the aforementioned representations, warranties, and covenants made by the Debtor/Defendant, on behalf of Merchant and as Guarantor, Debtor/Defendant did not inform Kapitus of the change in Merchant's financial condition or that Merchant was ceasing operations. *See Sale Terms and Conditions*, §§ 2.1, 2.15, pp. 3-4, **Exhibit 4**.

106.     Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, sold or caused to be sold all or substantially all of the Merchant's assets without notice to Kapitus pursuant to the Agreement. *See Sale Terms and Conditions*, § 2.15, p. 4, **Exhibit 4**.

107.     Debtor/Defendant's conduct demonstrates Debtor/Defendant on behalf of Merchant and as Guarantor, never intended to perform his obligations under the Agreement and obtained money from Kapitus by false pretenses, false statements, or actual fraud.

**H.     Debtor/Defendant's Successor Entity and Use and/or Transfer of Kapitus's Collateral**

108.     Debtor/Defendant, on behalf of Merchant and as Guarantor, made the following written representations, warranties, and covenants to Kapitus via the Agreement:

**II.   REPRESENTATIONS, WARRANTIES AND COVENANTS.
Seller and Guarantor represents, warrants and covenants that as of
this date and during the term of the Agreement:**

****

**2.7  Change of Name or Location**. Seller will not conduct Seller's business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser.

****

**2.15.   Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

*See Sale Terms and Conditions*, §§ 2.7, 2.15, pp. 3-4, **Exhibit 4**. (Emphasis in original).

109.    Debtor/Defendant has at least a 49% ownership interest in AlfaMax. (Case No. 23-60146, Doc. 1, p. 14).

110.    Upon information and belief, AlfaMax is or was a limited liability company duly organized in the State of Texas.  *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

111.    Upon information and belief, Debtor/Defendant is a managing member AlfaMax. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

112.    Pursuant to Debtor/Defendant's Statement of Financial Affairs, AlfaMax's address is 524 FM 1848, Buffalo, Texas 75831. (Case No. 23-60146, Doc. 1, p. 73).

113.     Pursuant to information available form the Texas Secretary of State, as of June 2023, AlfaMax's principal office is located at <u>1585 County Road 328, Buffalo, Texas 75831</u>. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

114.     Pursuant to Debtor/Defendant's Statement of Financial Affairs, Merchant's address is also <u>1585 County Road 328, Buffalo, Texas 75831</u>. (Case No. 23-60146, Doc. 1, p. 73).

115.     Pursuant to October 2021 Application, Merchant's address was also <u>1585 County Road 328, Buffalo, Texas 75831</u>. *See October 2021 Application,* **Exhibit 10**.

116.     Pursuant to the Forward Purchase Agreement entered into with Kapitus, Merchant's address was also <u>1585 County Road 328, Buffalo, Texas 75831</u>. *See Forward Purchase Agreement*, **Exhibit 3**.

117.     Upon information and belief, AlfaMax Animal Nutrition, LLC is merely a successor in interest to Merchant, Till Premium Alfalfa, LLC.

118.     Upon information and belief, AlfaMax and Merchant's type of business and business operations are substantially the same.

119.     Upon information and belief, AlfaMax via Debtor/Defendant received fraudulent transfers from Debtor/Defendant by way of the use of Merchant's personal property subject to the valid lien filed by Kapitus.

120.     Upon information and belief, Kapitus has superior rights and interests in the property used by AlfaMax.

121.     Upon information and belief, AlfaMax is also in possession of assets that were transferred to it by Debtor/Defendant to avoid the payment of the Purchased Receivables purchased by Kapitus and which rightfully belong to Kapitus.

122.     AlfaMax's possession of the property belonging to Kapitus, pursuant to its valid lien, subjects it owner/managing member, Debtor/Defendant to claims for conversion, unjust enrichment and receipt of fraudulent transfers and remedies including constructive trust.

**COUNT I**
**Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(2)(A)**
**False Pretenses, False Representations, Actual Fraud**

123.     Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

124.     The Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

125.     Debtor/Defendant obtained money and services by false pretenses, false representations, and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

126.     Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, a debt by which a debtor obtains money by false pretenses, false statements, or actual fraud shall not be dischargeable.

127.     Kapitus believes and alleges that the Debtor/Defendant, on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent not to pay the Receipts Purchased Amount to Kapitus.

128.     Kapitus believes and alleges that the Debtor/Defendant, on behalf of Merchant and as Guarantor, made false statements and misrepresentations to Kapitus with the intent to induce Kapitus to purchase Merchant's Receipts.

129.     As more fully detailed herein, upon information and belief, the Debtor/Defendant made misrepresentations and/or material omissions of fact including, but not limited to, representing that: (1) Merchant would not close without prior written notice to Kapitus; (2) Merchant would not sell all or substantially all of the Merchant's assets or equity interests without prior written notice to

Kapitus; (3) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (4) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; and (5) Merchant would ensure that funds adequate to remit payment to Kapitus were maintained in the Account.

130.     Kapitus justifiably relied on the Debtor/Defendant's representations, on behalf of Merchant and as Guarantor, when it entered into the Agreement and funded the Purchase Price to Merchant.

131.     Despite having made the above representations, among others, on behalf of Merchant and as Guarantor, to Kapitus in order to induce Kapitus enter into the Agreement and purchase Merchant's Receipts, Debtor/Defendant, at a minimum:

    a.   Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;

    b.   Failed to provide Kapitus with irrevocable access to the Account for payment;

    c.   Allowed the Account to be frozen and/or closed, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement;

    d.   Closed the Merchant's operations; and

    e.   Sold the Merchant's assets.

132.     Upon information and belief, at the time the false, untrue, and/or misleading representations were made, the Debtor/Defendant knew Debtor/Defendant's representations made on behalf of Merchant and as Guarantor were false, untrue, and/or misleading.

133. Upon information and belief, Debtor/Defendant intended to induce Kapitus to act or refrain from acting upon the Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor.

134 Kapitus justifiably relied upon Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor.

135. As a result of Debtor/Defendant's false, untrue, and/or misleading representations and/or material omissions made on behalf of Merchant and as Guarantor, the Merchant obtained the Purchase Price from Kapitus, which purchase would not have been authorized by Kapitus if the Debtor/Defendant's false, untrue, misleading representations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

136. Kapitus suffered damages as a direct and proximate consequence of false, untrue, and/or misleading representations and/or material omissions made by the Debtor/Defendant on behalf of Merchant and as Guarantor.

137. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein and proof.

138. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and interest under the contractual interest rate.

## COUNT II
### Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(2)(B)
### Use Of A Statement In Writing That Is Materially False Respecting The Debtor's Or An Insider's Financial Condition

139. Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

140.	Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting the debtor or an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

141.	Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

142.	The Debtor/Defendant is an an insider of the Merchant pursuant to 11 U.S.C. § 101(31)(A).

143.	Debtor/Defendant, on behalf of Merchant and as a Guarantor, did obtain money from Kapitus by the following written, materially false statements in the R&A and the Agreement, among others, respecting Merchant's financial condition upon which Kapitus reasonably relied in funding the Purchase Prince to Merchant, including, but not limited to: (1) The information and financial statements furnished to Kapitus fairly represent the operations of Merchant's business and the financial condition of both Merchant and Debtor/Defendant as Guarantor; (2) Merchant and Debtor/Defendant as Guarantor were in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser; (3) Merchant was in compliance with all federal state and local tax laws and had paid all taxes due, except as disclosed to Purchaser; (4) Merchant and Debtor/Defendant as Guarantor had had no federal, state, or local  taxing authority file any lien against the assets of the Merchant and/or Guarantor; (5) There were no material adverse changes, in the financial condition, operation, or ownership of Merchant or the Debtor/Defendant as Guarantor; (6) Merchant would not close without the express prior written consent of Kapitus; (7) Merchant would not sell all or substantially all of the Merchant's assets or equity interests without the express prior written

consent of Kapitus; (8) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (9) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; and (10) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account.

144.    Despite having made the above representations, among others to Kapitus in order induce Kapitus to purchase Merchant's Receipts, Debtor/Defendant, both on behalf of Merchant as Guarantor, at a minimum:

a.    Failed to disclose Merchant's true financial condition to Kapitus;

b.    Failed to disclose Debtor/Defendant's true financial condition to Kapitus;

c.    Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;

d.    Failed to provide Kapitus with irrevocable access to the Account for payment;

e.    Allowed the Account to be frozen and/or closed, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement;

f.    Closed the Merchant's operations; and

g.    Sold the Merchant's assets.

145.    Upon information and belief, as fully detailed above, at the same time these representations, among others, were made by Debtor/Defendant, both on behalf of Marchant and as Guarantor, Debtor/Defendant knew these representations were materially false.

146.    Debtor/Defendant, both on behalf of Marchant and as Guarantor, caused these materially false statements to be made in writing, including, but not limited to publishing such

statements in the October 2021 Application, the financial documents submitted to Kapitus in support of the application process, the R&A, and the Agreement.

147.  Kapitus reasonably relied on Debtor/Defendant's materially false written statements made by the Debtor/Defendant, both on behalf of Marchant and as Guarantor, in deciding to enter into the Agreement and fund the Purchase Price to Merchant.

148.  Kapitus suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor/Defendant, both on behalf of Marchant and as Guarantor.

149.  As a result of these materially false written statements made by the Debtor/Defendant, both on behalf of Merchant and as Guarantor, the Merchant obtained from Kapitus, *inter alia*, the Purchase Price, which would not have been authorized by Kapitus if the materially false written statements had not been made by Debtor/Defendant.

150.  The Debtor/Defendant's activities described above constitute obtaining money by materially false written statements regarding an insider's financial condition, on which Kapitus reasonably relied, and which the Debtor/Defendant made with the intent to deceive.

151.  Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), Debtor/Defendant's debt to Kapitus is non-dischargeable.

152.  Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual rate of interest.

## COUNT III
### Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(a)(4)
### Fraud Or Defalcation While Acting In A Fiduciary Capacity, Embezzlement, Or Larceny

153.  Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

154.     The Debtor/Defendant's liability to Kapitus, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of section 523(a)(4) of the Bankruptcy Code.

155.     Kapitus believes and alleges, Debtor/Defendant entered into the Agreement, both on behalf of Merchant and as Guarantor, with the specific intent to take funds from Kapitus without any intent to repay these funds.

156.     Pursuant to the R&A and the Agreement, Debtor/Defendant represented: (1) The information and financial statements furnished to Kapitus fairly represent the operations of Merchant's business and the financial condition of both Merchant and Debtor/Defendant as Guarantor; (2) Merchant and Debtor/Defendant as Guarantor were in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser; (3) Merchant was in compliance with all federal state and local tax laws and had paid all taxes due, except as disclosed to Purchaser; (4) Merchant and Debtor/Defendant as Guarantor had had no federal, state, or local taxing authority file any lien against the assets of the Merchant and/or Guarantor; (5) There were no material adverse changes, in the financial condition, operation, or ownership of Merchant or the Debtor/Defendant as Guarantor; (6) Merchant would not close without the express prior written consent of Kapitus; (7) Merchant would not sell all or substantially all of the Merchant's assets or equity interests without the express prior written consent of Kapitus; (8) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (9) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; and (10) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account.

157.    Kapitus reasonably relied on these representations, among others, made by the Debtor/Defendant, both on behalf of Marchant and as Guarantor, in deciding to enter into the Agreement and fund the Purchase Price to Merchant.

158.    Despite having made the above representations, among others, to Kapitus to induce Kapitus to purchase Merchant's Receipts, Debtor/Defendant, on behalf of Merchant and as Guarantor, at a minimum:

      a.      Failed to disclose Merchant's true financial condition to Kapitus;

      b.      Failed to disclose Debtor/Defendant's true financial condition to Kapitus;

      c.      Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;

      d.      Failed to provide Kapitus with irrevocable access to the Account for payment;

      e.      Allowed the Account to be frozen and/or closed, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement;

      f.      Closed the Merchant's operations; and

      g.      Sold the Merchant's assets.

159.    Upon information and belief, the Debtor/Defendant, on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent to transfer or hide the Purchase Price and Collateral and prevent Kapitus from collecting the obligations owed to it.

160.    Upon information and belief, Debtor/Defendant obtained the Purchase Price from Kapitus by committing fraud and defalcation while acting in a fiduciary capacity as the sole owner and managing member of Merchant.

161.     Upon information and belief, Debtor/Defendant misappropriated portions of the Purchase Price and receivables for his own benefit by fraudulent intent or deceit.

162.     Upon information and belief, Debtor/Defendant used the Purchase Price/funds received and the receivables without explanation, reason, or purpose relating to Merchant's business, and failed to use Purchase Price/funds received for business materials as represented in the Agreement.

163.     Because of the insolvency of Merchant, the Debtor/Defendant had fiduciary obligations to Kapitus as a creditor.

164.     Members and/or managing member of a limited liability company owe fiduciary duties to the limited liability company's creditors when the limited liability company is insolvent or in the zone of insolvency.

165.     When a limited liability company becomes insolvent, the members and/or managing member stand in a trust relation towards creditors, and as trustees of company properties for the benefit of creditors. Hence, the members and/or managing member of an insolvent company are placed in a fiduciary relation to its creditors.

166.     The Debtor/Defendant was the sole and managing member of Merchant.

167.     Upon information and belief, Merchant was insolvent at the time it received the Purchase Price from the Kapitus, or became insolvent shortly thereafter. Therefore, the Debtor/Defendant owed fiduciary duties to manage Merchant's assets in trust for Merchant's creditors, including Kapitus.

168.     The Debtor/Defendant's failure to manage Merchant's assets is a breach of fiduciary duty.

169.    Upon information and belief, the Debtor/Defendant used his power as the sole and managing member of Merchant for the purpose of obtaining a preference or advantage to himself.

170.    Upon information and belief, the Debtor/Defendant misappropriated portions of Merchant's receipts for his own benefit.

171.    These were breaches of fiduciary duty owed to Kapitus.

172.    The Debtor/Defendant's actions in violation of these fiduciary duties constitute legal fraud.

173.    Virginia law governs the Agreement.

174.    Under Virginia law, an express trust can be found through the parties' actions and does not need to be in writing. All that is necessary is the unequivocal intent that the legal estate be vested in one person, to be held in some matter or for some purpose on behalf of another. A trust is created if the intention is that the money be kept or used as a separate fund for the benefit of the payor or a third person.

175.    An express trust is a fiduciary relationship with respect to property.

176.    Here, the parties intended to and did enter into an express trust, and Debtor/Defendant owed a fiduciary duty to Kapitus.

177.    Debtor/Defendant was supposed to hold Merchant's receipts in the Account for Kapitus' benefit. Upon information and belief, he did not do so.

178.    Kapitus sustained damages because of the Debtor/Defendant's fraud and defalcation while acting as a fiduciary, his embezzlement and/or larceny of the funding and receivables.

179.    Upon information and belief, all the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent

of, the Debtor/Defendant and thus the Debtor/Defendant is in breach of the Agreement giving Kapitus a right to recover damages.

180. Debtor/Defendant's obligation to Kapitus is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.

181. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein.

182. Kapitus is also entitled to attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual interest rate.

### COUNT IV
### Non-Dischargeability Of Debt Pursuant To 11 U.S.C. § 523(A)(6)
### Willful And Malicious Injury By The Debtor

183. Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

184. Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

185. Kapitus believes and alleges Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent not to use the Purchase Price proceeds for business purposes and/or to not pay Kapitus the Receipts Purchased Amount.

186. In addition, Kapitus believes and alleges Debtor/Defendant, both on behalf of Merchant and as Guarantor, made false statements to Kapitus with the intent to induce Kapitus to transfer the Purchase Price.

187. Further, upon information and belief, Debtor/Defendant, both on behalf of Merchant and as Guarantor, willfully and maliciously executed the Agreement and represented

to Kapitus that: (1) The information and financial statements furnished to Kapitus fairly represent the operations of Merchant's business and the financial condition of both Merchant and Debtor/Defendant as Guarantor; (2) Merchant and Debtor/Defendant as Guarantor were in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser; (3) Merchant was in compliance with all federal state and local tax laws and had paid all taxes due, except as disclosed to Purchaser; (4) Merchant and Debtor/Defendant as Guarantor had had no federal, state, or local taxing authority file any lien against the assets of the Merchant and/or Guarantor; (5) There were no material adverse changes, in the financial condition, operation, or ownership of Merchant or the Debtor/Defendant as Guarantor; (6) Merchant would not close without the express prior written consent of Kapitus; (7) Merchant would not sell all or substantially all of the Merchant's assets or equity interests without the express prior written consent of Kapitus; (8) Merchant intended to use the funding amount for business purposes rather than personal, family, or household purposes; (9) Merchant would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; and (10) Merchant would ensure that funds adequate to remit payment to Kapitus were kept in the Account.

188.    Kapitus justifiably relied on the Debtor/Defendant's representations made on behalf of Merchant and as Guarantor when it entered into the Agreement and transferred the Purchase Price to Merchant.

189.    In spite of having made the above representations, among others, to Kapitus to induce Kapitus to enter into the Agreement and purchase Merchant's Receipts, Debtor/Defendant, on behalf of Merchant and as Guarantor, at a minimum:

    a.    Failed to disclose Merchant's true financial condition to Kapitus;

b. Failed to disclose Debtor/Defendant's true financial condition to Kapitus;

c. Failed to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus;

d. Failed to provide Kapitus with irrevocable access to the Account for payment;

e. Allowed the Account to be frozen and/or closed, which prohibited Kapitus from collecting on the amounts rightly owed to it under the Agreement;

f. Closed the Merchant's operations; and

g. Sold the Merchant's assets.

190. Debtor/Defendant's activities on behalf of Merchant and as Guarantor described herein constitute willful and malicious conduct which resulted in damage to Kapitus.

191. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), the Debtor/Defendant's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein.

192. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint and the contractual interest rate.

## COUNT V
### Fraud Against Debtor/Defendant, individually

193. Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

194. Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, obtained money and services by actual fraud under Virginia law.

195. Upon information and belief, Debtor/Defendant, on behalf of Merchant and as Guarantor, intentionally and knowingly, made false and material representations in the October

2021 Application, R&A, and Agreement, as described above, and had no intention to honor the Agreement, including the Guaranty.

196.   As fully detailed above, Debtor/Defendant, on behalf of Merchant and as Guarantor, made false statements in connection with the October 2021 Application, the financial documents submitted in support of the October 2021 Application, and in connection with the warranties and representations included in the R&A as well as the Agreement, including the Guaranty.

197.   Upon information and belief, Debtor/Defendant knew his statements made on behalf of Merchant and as Guarantor were false, and, as a direct and proximate cause of these intentional and material misrepresentations and omissions, intended to induce and did induce Kapitus to enter to the Agreement and tender the Purchase Price to Merchant.

198.   Upon information and belief, Debtor/Defendant intended to induce Kapitus to act or refrain from acting upon Debtor/Defendant's false statements made on behalf of Merchant and as Guarantor.

199.   Kapitus reasonably relied upon Debtor/Defendant's false statements made on behalf of Merchant and as Guarantor in entering into the Agreement and funding the Purchase Price to Merchant.

200.   Kapitus has suffered damages as a direct and proximate consequence of the false representations made by Debtor/Defendant on behalf of Merchant and as Guarantor.

201.   As a result of false statements and fraud by Debtor/Defendant, both on behalf of Merchant and as Guarantor, Merchant obtained the Purchase Price from Kapitus, which purchase Kapitus would not have authorized if the Debtor/Defendant's false representations had not been made or if material facts omitted and concealed by Debtor/Defendant had been disclosed.

202.     October 15, 2021, Kapitus funded the Purchase Price to Merchant as required under the Agreement, in reliance on the Debtor/Defendant's false and material representations made on behalf of Merchant and as Guarantor in the October 2021 Application, the financial documents submitted in support of the October 2021 Application, and in connection with the warranties and representations included in the R&A and Agreement, including within the Guaranty.

203.     Debtor/Defendant, both on behalf of Merchant and as Guarantor, entered into the Agreement with the specific intent to take these funds from Kapitus without intent to repay the Purchase Price per the Agreement.

204.     Debtor/Defendant's statements and acts described above made both on behalf of Merchant and as Guarantor constitute actual fraud under Virginia law.

205.     Upon information and belief, Debtor/Defendant misappropriated significant portions of the Purchase Price and/or Receipts for his own benefit by fraudulent intent or deceit.

206.     Upon information and belief, Debtor/Defendant transferred the Purchase Price and/or Receipts into accounts not accessible by Kapitus.

207.     Upon information and belief, Debtor/Defendant used the Purchase Price and/or Receipts without explanation, reason, or purpose relating to Merchant's business.

208.      Upon information and belief, Debtor/Defendant closed the Specified Account to avoid making payments to Kapitus under the Agreement.

209.      Upon information and belief, Debtor/Defendant transferred the Purchase Price and/or Receipts into accounts other than the Specified Account to avoid making payments to Kapitus under the Agreement.

210.     Kapitus is entitled to an award of damages of $163,850.87, which represents the value of Receipts purchased and remaining owed to Kapitus, plus attorneys' fees, costs incurred, such other relief as the Court deems just and proper.

**COUNT VI**
**Successor Liability against Debtor/Defendant, individually, and**
**AlfaMax Animal Nutrition LLC**

211.     Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

212.     On March 21, 2023, Debtor/Defendant filed a Voluntary Petition under Chapter 7 with this Court (Case No. 23-60146, Doc. 1).

213.     According to Debtor/Defendant's Petition/Statement of Financial Affairs, Merchant has not ceased operations in that no date of closure for the Merchant's business is listed. (Case No. 23-60146, Doc. 1, p. 73).

214.     However, pursuant to the information available via the Texas Secretary of State's Office, Merchant has forfeited its existence/dissolved. *See Till Premium Alfalfa LLC TX SOS Search dated June 2023*, **Exhibit 2.**

215.     Debtor/Defendant has at least a 49% ownership interest in AlfaMax. (Case No. 23-60146, Doc. 1, p. 14).

216.     Upon information and belief, AlfaMax is or was a limited liability company duly organized in the State of Texas. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

217.     Upon information and belief, Debtor/Defendant is a managing member of AlfaMax. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

218.     Pursuant to Debtor/Defendant's Statement of Financial Affairs, AlfaMax's address is 524 FM 1848, Buffalo, Texas 75831. (Case No. 23-60146, Doc. 1, p. 73).

219.     Pursuant to information available form the Texas Secretary of State, as of June 2023, AlfaMax's principal office is located at 1585 County Road 328, Buffalo, Texas 75831. *See AlfaMax Animal Nutrition LLC TX SOS Search dated June 2023,* **Exhibit 1**.

220.     Pursuant to Debtor/Defendant's Statement of Financial Affairs, Merchant's address is also 1585 County Road 328, Buffalo, Texas 75831. (Case No. 23-60146, Doc. 1, p. 73).

221.     Pursuant to October 2021 Application, Merchant's address was also 1585 County Road 328, Buffalo, Texas 75831. *See October 2021 Application,* **Exhibit 10**.

222.     Pursuant to the Forward Purchase Agreement, Merchant's address was also 1585 County Road 328, Buffalo, Texas 75831. *See Forward Purchase Agreement*, **Exhibit 3**.

223.     Upon information and belief, AlfaMax is a successor in interest to Merchant.

224.     Upon information and belief, AlfaMax's and Merchant's type of business and business operations are substantially the same.

225.     Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of AlfaMax made a transfer of assets from Merchant to Debtor/Defendant, individually, and to AlfaMax to avoid paying a debt owed by Merchant to Kapitus.

226.     Accordingly, Kapitus is entitled to an award of damages from Debtor/Defendant, individually, and AlfaMax in the amount of $163,850.87, which represents the value of Receipts purchased and remaining owed to Kapitus, plus attorneys' fees, costs incurred, such other relief as the Court deems just and proper.

## COUNT VII
### Conversion Against Debtor/Defendant, individually, and
### AlfaMax Animal Nutrition LLC

227.    Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

228.    Kapitus, pursuant to the Agreement, has an interest superior to the Debtor/Defendant, individually, and AlfaMax, in the Receipts and other Collateral previously belonging to Merchant.

229.    Debtor/Defendant, individually, and as an owner/managing member of AlfaMax, without authorization, wrongfully assumed and exercised dominion and control over the Receipts and other Collateral of the Merchant.

230.    Kapitus was entitled to possession of the Receipts and other Collateral because of its superior interest under the Agreement and the related Kapitus UCC-1 filing.

231.    Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of AlfaMax has intentionally and without authority, assumed and exercised control over the Merchant's Receipts and other Collateral properly belonging to Kapitus, interfering with Kapitus's right of possession.

232.    Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of AlfaMax has utilized and depleted the Merchant's Receipts and other Collateral.

233.    Kapitus seeks damages from Debtor/Defendant, individually, and as an owner/managing member of AlfaMax because of his conversion, including judgment in the amount of $163,850.87, plus attorneys' fees, costs incurred, punitive damages and such other relief as the Court deems just and proper.

## COUNT VIII
## Fraudulent Transfer Against Debtor/Defendant, Individually,
## and AlfaMax Animal Nutrition, LLC

234.     Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

235.     Kapitus also asserts actual intent fraudulent transfer claims and constructive fraudulent transfer claims against Debtor/Defendant, individually, and AlfaMax with respect to the transfer of any and all assets to AlfaMax.

236.     Under Va. Code Ann. § 55-80 (and any other similar state law applicable here under), a transfer is voidable as to a creditor, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud a creditor of the debtor, or if the debtor made the transfer or incurred the obligation without fair consideration or receiving reasonably equivalent value.

237.     Upon information and belief, Debtor/Defendant, individually, and as an owner/managing member of AlfaMax intended to hinder, delay, or defraud Kapitus by transferring the Receipts and other Collateral to AlfaMax.

238.     Upon information and belief, in addition to those facts specifically pled above, many of the additional factors considered as probative of fraudulent transfer under the applicable law are present in this case. For example: (a) the transfers were concealed; (b) the Debtor/Defendant's business operations with the Merchant were folding and the Debtor/Defendant was in the process of re-establishing a new business (AlfaMax) within the same business market; (c) the Debtor/Defendant concealed assets and information from Kapitus; (d) the Debtor/Defendant received little, if any, value in exchange for the transfer/sale of assets; (e) the transfers occurred

when the Debtor/Defendant was insolvent; (f) Debtor/Defendant effectively retained possession of the property.

239.     AlfaMax was on actual notice of Kapitus' security interest in the Merchant's Receipts and other Collateral because its 49% owner/managing member, the Debtor/Defendant, was aware of Kapitus' security interest in the Merchant's Receipts and other Collateral.

240.     The elements of "actual intent" are satisfied by the facts set forth herein.

241.     Upon information and belief, Debtor/Defendant transferred the Merchant's Receipts and other Collateral to Debtor/Defendant, individually, and to AlfaMax without fair consideration or receiving reasonably equivalent value.

242.     Upon information and belief, Debtor/Defendant, individually, and/or AlfaMax did not give the Merchant any consideration for the Receipts and other Collateral.

243.     The elements of a "constructive" fraudulent conveyance are satisfied by the facts set forth herein.

244.     Kapitus is entitled to avoid all of the transfers of the Merchant's Receipts and other Collateral to Debtor/Defendant, individually, and/or AlfaMax under applicable state law.

245.     Pursuant to Va. Code Ann. § 55-80, judgment should be entered avoiding the transfers of the Receipts and the Collateral to Debtor/Defendant, individually, and/or AlfaMax, entering judgment against Debtor/Defendant, individually, and/or AlfaMax in favor of Kapitus for the value of the property transferred, plus interest, attorney's fees and costs.

**COUNT IX**
**Replevin Against Debtor/Defendant, individually, and**
**AlfaMax Animal Nutrition, LLC**

246.    Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

247.    The Agreement and Guaranty are valid and enforceable agreements.

248.    Debtor/Defendant has defaulted under his obligations under the Agreement and Guaranty by virtue of, *inter alia*, the events identified above and failing to pay all amounts due thereunder and thus, Kapitus has been damaged.

249.    Kapitus has a duly perfected interest in the Collateral.

250.    In accordance with the Agreement, Kapitus is entitled to exercise all rights and remedies available to it at law or in equity, as well as those available to a secured party under the UCC.

251.    The UCC provides, in part, "... after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties." UCC § 9-609(c).

252.    The secured party's right to possession of the collateral upon default may be asserted against a third party in possession, which may not properly refuse upon the secured party's request for delivery.

253.    Upon information and belief, Debtor/Defendant, individually, and AlfaMax is in possession of the Collateral.

254.    By reason of Debtor/Defendant, individually, and AlfaMax's wrongful retention of the Collateral, Kapitus is entitled to an order for replevin under section 9-609(c) of the Uniform Commercial Code.

**COUNT X**
**Unjust Enrichment against Debtor/Defendant, individually, and**
**AlfaMax Animal Nutrition, LLC and Imposition of Constructive Trusts**

255.     Kapitus repeats and realleges paragraphs 1 through 122 above and incorporates the same as though set forth herein.

256.     Kapitus conferred a benefit on Debtor/Defendant through the Purchase Price that it paid for Merchant's receivables.

257.     Upon information and belief, Debtor/Defendant, individually, and AlfaMax have been benefiting from the Purchase Price and use of Kapitus' Collateral without making any payments or restitution to Kapitus for same.

258.     Debtor/Defendant knew or should have known of the benefit conferred by Kapitus and the expectation of payment.

259.     The retention and use of the Purchase Price and Collateral by Debtor/Defendant, individually, and/or AlfaMax is unjust.

260.     Debtor/Defendant, individually, and/or AlfaMax have been unjustly enriched by using the Purchase Price and Collateral without making payments or restitution to Kapitus for them.

261.     By reason of the foregoing, Debtor/Defendant, individually, and AlfaMax, have damaged Kapitus in an amount to be determined at trial, but no less than $163,850.87, which represents the value of Receipts purchased and remaining owed to Kapitus, plus attorneys' fees, costs incurred, such other relief as the Court deems just and proper.

262.     By reason of the foregoing, Kapitus is entitled to the imposition of a constructive trusts because Debtor/Defendant, individually and AlfaMax are receiving unjust enrichment through the use of the Collateral that rightly belongs to Kapitus.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kapitus Servicing, Inc., As Servicing Agent For Kapitus LLC prays

for entry of judgment against the Debtor/Defendant Thomas James Till, individually, and Defendant,

AlfaMax Animal Nutrition LLC as follows:

A.       For an order providing that the debt owed by Debtor/Defendant to Kapitus is non-dischargeable in the instant bankruptcy case, in any other proceeding under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor/Defendant;

B.       Judgment declaring the entire debt owed by Debtor/Defendant to Kapitus is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. §523(a)(2)(B), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6);

C.       Judgement against Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC for fraud;

D.       Judgment declaring AlfaMax Animal Nutrition LLC is a successor in liability for the debt incurred by Merchant and Debtor/Defendant to Kapitus;

E.       Judgment against Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC for conversion;

F.       Judgment declaring AlfaMax Animal Nutrition LLC is a successor in liability for the debt incurred by Merchant and Debtor/Defendant to Kapitus;

G.       Judgement against Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC for fraudulent transfer;

H.       Judgment granting an order for replevin against Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC under section 9-609(c) of the Uniform Commercial Code;

I.       Judgment against Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC for unjust enrichment and imposition of constructive trust over the Collateral;

J.       Granting Kapitus an award of damages from Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC in the amount of $163,850.87, plus interest;

K.       Granting Kapitus an award of damages from Debtor/Defendant, individually, and AlfaMax Animal Nutrition LLC for Kapitus' attorneys' fees and costs herein incurred;

L.       Granting such other and further relief as this Court may deem just and proper.

Dated: June 20, 2023

SPENCER FANE LLP

*/s/ Misty A. Segura* _____

Misty A. Segura
Texas Bar No. 24033174
3040 Post Oak Boulevard, Suite 1400
Houston, TX 77056
Telephone: 713.212.2643
E-mail: msegura@spencerfane.com

*/s/ Elizabeth M. Lally*

Elizabeth M. Lally (*Pro Hac Vice* to be filed)
Illinois Bar No. 6286664
Indiana Bar No. 28278-49
Iowa Bar No. AT0013010
Nebraska Bar No. 26428
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: 402.965.8600
E-mail: elally@spencerfane.com

**Attorneys for Plaintiff, Kapitus Servicing, Inc., as servicing agent for Kapitus LLC**