# SALE TERMS AND CONDITIONS

## I. GENERAL TERMS

**1.1 Sale of Receipts.** Seller and Purchaser intend that the transfer of the interest in the Receipts from Seller to Purchaser constitutes a forward sale, and not a loan, for all legal, practical and business purposes. Seller agrees that the Purchase Price equals the fair market value of the Receipts being purchased as of the date sold that are expected to come into existence in the future in the ordinary course of the operation of Seller's business. Title to, responsibility for and risk of loss of the interest in the Receipts shall pass from the Seller to the Purchaser upon execution of this Agreement with respect to the Purchased Amount. In addition:

(a) as further set forth in the Security Agreement, Seller hereby grants to Purchaser a security interest in all right, title and interest of Seller in and to the Receipts, which security interest shall secure the payment of the Purchase Price and all other obligations of Seller under this Agreement. Seller hereby authorizes Purchaser to file any financing statements deemed necessary by Purchaser to perfect or maintain Purchaser's interest in the Receipts;

(b) the parties acknowledge that the delivery of the Purchase Price is not a payment in whole or in part for the use or forbearance of money, but rather delivery of the bargained for payment of the purchase price to Purchaser under the Purchase Agreement, notwithstanding anything to the contrary contained herein;

(c) the Parties agree and acknowledge that there is no stated or unstated interest factor in this Agreement, and no interest will be paid;

(d) in the event that a court ignores the intent of the parties that the Transaction Documents be treated as a forward purchase of Receipts, and further determines that the arrangement creates a loan or other indebtedness rather than a completed forward sale of Receipts, and further determines that under that court-determined arrangement that the PURCHASER has charged or received "interest," and further determines that the amount of interest is in excess of the highest applicable rate, the imputed rate so determined shall automatically be reduced to the maximum rate permitted by applicable law and Purchaser shall promptly refund to Seller as liquidated damages any amount received by Purchaser in excess of such maximum lawful rate, it being intended that Seller not pay or contract to pay, and that Seller not receive or contract to receive, directly or indirectly in any manner whatsoever, interest on indebtedness in excess of that which may be paid by Seller under applicable law.

**1.2 Term of Agreement.** The Purchase Agreement shall have an indefinite term. The Purchase Agreement shall commence with Purchaser's delivery of the funds constituting the Purchase Price and shall run until such time as Purchaser receives sufficient receipts to equal the value of the Purchased Amount and thus fulfill the delivery of the future receivable purchased and all of Seller's other obligations to Purchaser are fully satisfied. The Purchase Agreement and the provisions of this Section 1.2 are applicable to any renewals and additional agreements executed by the parties that constitute Forward Purchase Agreements and/or purchase of future receivables.

**1.3 Authorization to Debit.** Seller shall establish an account with a financial institution acceptable to Purchaser that will be designated to collect the Receipts generated by Seller. Seller hereby authorizes Purchaser and/or its agents to obtain any amounts due pursuant to the Transaction Documents by ACH debit of the account designated, or of any other Seller account, as provided pursuant to the Transaction Documents. This authorization shall be irrevocable without the written consent of Purchaser. Seller shall provide Purchaser and/or its agents with all of the information and authorizations necessary for verifying Sellers's receivables, Receipts and deposits.

**1.3 Financial Condition**. Seller and Guarantor(s) authorize Purchaser to investigate their financial responsibility and history, and will provide to Purchaser any bank or financial statements, tax returns, or any other documentation, as Purchaser deems necessary prior to or at any time after execution of the Transaction Documents. A photocopy of this authorization will be deemed as acceptable for release of any necessary information. Seller and Guarantor(s) authorize and consent to Purchaser updating their credit and financial profile from time to time in the future, as Purchase deems appropriate, including by obtaining investigative, consumer, and personal or business credit reports. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.4. Financial Information and Credit Reporting.** Seller and Guarantor authorize Purchaser to obtain business and personal credit bureau and consumer reports at any time and from time to time for purposes of deciding whether to purchase Receipts from Seller, for any requested loan or for any update, renewal, extension of credit or other lawful purpose. Upon Seller's or Guarantor's request, Purchaser will advise Seller or Guarantor if Purchaser obtained a credit report and Purchaser will give Seller or Guarantor the credit bureau's name and address. Seller and Guarantor agree to submit current financial information, update any credit application, or both, at any time promptly upon Purchaser's request. Purchaser may report Purchaser's experiences with Seller and Guarantor to third parties as permitted by law. Seller and Guarantor also agree that Purchaser may release information to comply with governmental reporting or legal process that Purchaser believes may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss, and/or seeking recovery for such loss. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.5 Transactional History.** Seller and Guarantor authorize Purchaser to act as Seller's and Guarantor's agent,

respectively, for purposes of accessing and retrieving transaction history information regarding Seller and/or Guarantor from Seller's and Guarantor's financial institutions, banks, banking accounts, and/or credit card processing accounts. Seller and Guarantor authorize their respective financial institutions to provide Purchaser with Seller's and Guarantor's transaction history, and any and all information regarding Seller's and Guarantor's accounts, balances, or transfers, for any purpose, including for purposes of collection. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.6 Indemnification.** Seller and Guarantor jointly and severally will indemnify and hold Purchaser, and its officers, directors, shareholders, members, managers, employees, owners, partners, affiliates, subsidiaries, parent company, successors, transferees, assigns, purchasers, investors, financiers, agents, representatives, attorneys and professionals, (collectively, the "Purchaser Parties") harmless from all losses, costs, damage, liabilities or expenses (including, without limitation, court costs and attorneys' fees) that the Purchaser Parties may sustain or incur by reason of defending claims asserted by Seller and/or Guarantor, and all persons and entities claiming by, through or under them, to the fullest extent permitted by law, in protecting the security interest conveyed pursuant to the Security Agreement or the priority thereof, in enforcing any other term of the Transaction Documents, and/or in the prosecution or defense of any action or proceeding concerning any matter arising out of or in connection with the Transaction Documents and/or any other documents now or hereafter executed in connection with the Transaction Documents, the Collateral and/or the Additional Collateral, including without limitation any legal or dispute resolution proceeding, bankruptcy proceeding, receivership, and/or any other insolvency proceeding or other proceeding for relief for debtors or creditors.

In no event will Purchaser, its officers, directors, shareholders, members, managers, employees, affiliates, agents or representatives be liable for any claims asserted by Seller under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Seller and Guarantor(s). This section shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.7 Power of Attorney.** Seller irrevocably appoints Purchaser as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Purchaser, or in the case of the occurrence of any Event of Default, from Seller, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Purchaser; and (v) to file any claims or take any action or institute any proceeding which Purchaser may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.8 Disclosure of Information**. Seller and Guarantor and each person signing this Agreement on behalf of Seller and/or as a Guarantor, in respect of himself or herself personally, authorizes Purchaser to disclose information concerning Seller's and each Guarantor's credit standing (including credit bureau reports that Purchaser obtains) and business conduct. Seller and each Guarantor hereby waives to the maximum extent permitted by law any claim for damages against Purchaser Parties relating to any (i) investigation undertaken by or on behalf of Purchaser as permitted by the Transaction Documents or (ii) disclosure of information as permitted by the Transaction Documents. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.9 Publicity.** Seller and Guarantor(s) authorize Purchaser to use its, his or her name in a listing of clients and in advertising and marketing materials. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.10 UCC Agent & D/B/A's.** Seller and Guarantor(s) hereby acknowledge and agree that Purchaser may be using affiliates, representatives, agents, "doing business as" or "d/b/a" and/or fictitious names in connection with various matters relating to the transaction between Purchaser and Seller and Guarantor(s), and may file UCC-1 financing statements and other notices or filings using such names on its own behalf or though Purchaser's UCC agent. Purchaser shall have no obligation to terminate any UCC financing statement filed in connection with the Purchase Agreement absent a written request by Purchaser and after delivery of the Receipts purchased and the fulfillment of all of Seller's obligations to Purchaser under the Transaction Documents, and payment of the UCC Termination fee stated in the Purchase Agreement. Notwithstanding any terms to the contrary contained herein, and except as may be required under applicable law, Purchaser shall have no obligation to terminate any UCC financing statement while there is a pending: (i) petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue filed by or against Purchaser, Seller, or Guarantor(s); (ii) insolvency proceeding or other proceeding instituted against Purchaser, Seller or Guarantor(s), and/or any other guarantor for relief for debtors or creditors; (iii) receivership proceeding brought by or against Purchaser, Seller, Guarantor, and/or any other guarantor; and/or (iv) any other legal proceeding or alternative dispute resolution proceeding between any of the Seller and/or Guarantor, on the one hand, and the Purchaser Parties, on the other hand. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**1.11. Alternative Delivery of Receipts.** If Seller or Guarantor knows that for any reason Purchaser will be unable to receive delivery of the Receipts from Seller's account, then Seller must promptly set up

**Exhibit 4**

another arrangement for delivery of receipts that is authorized by Purchaser. Seller and Guarantor understand and agree that delivery of Receipts made at any other address or method than as specified by Purchaser may result in a delay in processing and/or crediting the delivery of Receipts by Seller.

**1.12 Early Delivery Option**. Seller shall have the option to deliver the Purchased Amount at any time, along with any fees incurred under the Transaction Documents, less Receipts previously delivered. Purchaser may, from time to time, and in the Purchaser's sole discretion, offer discounts for early delivery of Receipts communicated to Seller through one or more customer web interfaces, emails or addenda to the Purchase Agreement. Such discounts will be based on the time elapsed since disbursement of the Purchase Price, the history of the delivery of Receipts, and the remaining amount of Receipts due to be delivered.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS** Seller and Guarantor represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller and Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership. Purchaser may request statements at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within five (5) business days. Seller's failure to do so is a material breach of this Agreement.

**2.2 Compliance with Law.** Seller is in compliance and shall comply with all laws, including possession of all necessary permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Seller, and the person(s) signing the Transaction Documents on behalf of Seller, have full power and authority to incur and perform the obligations under the Transaction Documents, all of which have been duly authorized.

**2.4 Insurance.** Seller will maintain property, liability, and business interruption insurance and name Purchaser as certificate holder, loss payee and additional insured in amounts and against risks as are satisfactory to Purchaser and shall provide Purchaser proof of such insurance upon request.

**2.5 Tax Obligations.** Seller is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to Purchaser. No federal, state, or local taxing authority has filed any lien against the assets of the Seller and/or Guarantor. Seller or Guarantor shall pay all taxes owed to federal, state, or local governments when due.

**2.6 Deposit Arrangements and Delivery of Receipts.** Without Purchaser's prior written consent, Seller will not (i) change the account designated for the delivery of Receipts; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on Purchaser debit; (iv) permit any event to occur that could cause diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under the Transaction Documents. Seller will batch out receipts with all payment processors on a daily basis.

**2.7 Change of Name or Location.** Seller will not conduct Seller's business(es) under any name other than as disclosed to the Purchaser or change any of its places of business, or change its jurisdiction or incorporation or organization without ten (10) days prior written notice to Purchaser.

**2.8 Estoppel Certificate.** Seller will at any time, and from time to time, upon at least one (1) day's prior notice from Purchaser to Seller, execute, acknowledge and deliver to Purchaser and/or to any other person, firm or corporation specified by Purchaser, a statement certifying that the Purchase Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy or Insolvency**. Seller is solvent, no transfer of property is being made by Seller, and no obligation is being incurred by Seller in connection with the sale of Receipts with the intent to hinder, delay, or defraud either present or future creditors of Seller. Seller represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Seller. Seller further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Other Financing.** Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent.

Exhibit 4

DocuSign Envelope ID: 8815D9B1-ED8B-4616-A15D-6DFA1AFF031D

**2.11 Unencumbered Receipts.** Seller has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.

**2.12 Authorization to Obtain Lease Information.** Seller and Guarantor authorize Purchaser to receive pertinent information regarding the commercial lease or mortgage for the physical location of Seller's business (the "Premises") from any applicable lender, leasing company or agent. Upon any Event of Default under this Agreement, as security for the Seller's obligations set forth herein, Seller and/or Guarantor shall, at the request of Purchaser deliver to Purchaser an executed Assignment of Lease covering the Premises in favor of Purchaser.

**2.13. Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.14 Default Under Other Contracts.** Seller's execution of and/or performance under this Agreement will not cause or create an event of default by Seller under any contract with another person or entity.

**2.15. Sale or Dissolution of Seller.** Seller shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Seller; or (b) effectuate the suspension, dissolution, or termination or Seller's business without the express prior written consent of Purchaser, or the written agreement of any purchaser, assignee, or transferee assuming all of Seller's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser (as applicable).

**2.16 Accuracy of Information.** All information provided by Seller and Guarantor to Purchaser in the Transaction Documents, in any application, in all other Seller forms and in response to any request by Purchaser for information whether oral or in writing, is true, accurate and complete in all respects.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Seller changes its deposit or banking relationships with any financial institution in any way that interferes with the delivery of the Receipts, including, by way of example and not limitation, using multiple depository accounts to collect Receipts without the prior written consent of Purchaser;

(b) Seller closes or changes the account(s) designated to collect the Receipts without notice to Purchaser, or otherwise permits any event to occur that could cause diversion of any Receipts to an account other than that designated to collect the Receipts;

(c) Seller interrupts the operation of its business in the ordinary course (other than as a result of adverse weather, natural disasters or acts of God) without notice to Purchaser of any planned shutdown or interruption of operations,

(d) Seller transfers, moves, sells, disposes, transfers or otherwise conveys its business, or all or substantially all of its assets, without: (i) the express prior written consent of Purchaser, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Seller's obligations under the Transaction Documents pursuant to documentation satisfactory to Purchaser;

(e) any debit is rejected or returned due to insufficient funds and Seller fails to respond to Purchase inquiries or to contact Purchaser within five (5) business days;

(f) Seller shall violate any term, covenant, or condition in the Transaction Documents;

(g) any representation or warranty by Seller in the Transaction Documents shall prove to have been incorrect, false or misleading in any material respect when made;

(h) Seller or Guarantor sends a notice of termination of any Purchase Agreement;

(i) Seller suspends, dissolves or terminates its corporate existence without notice to Purchaser;

(j) Seller or Guarantor makes or sends notice of any intended assignment, bulk sale or transfer of Seller's assets;

(k) Seller or Guarantor performs any act that reduces the value of any Collateral or Additional Collateral or reduces the value of the Collateral or Additional Collateral granted under the Security Agreement;

(l) Seller or Guarantor fails to pay taxes to any federal, state, or local government when due; or

(m) Seller shall default under any of the terms, covenants and conditions of any other agreement with Purchaser, including those between Purchaser and any business that is affiliated or associated with Seller.

**3.2 Remedies for Default.** In case any Event of Default occurs and is not waived by Purchaser: Purchaser may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Seller's obligations under the Transaction Document or any other legal or equitable right or remedy. In addition, and without limitation, upon any Event of Default: (a) the full uncollected Purchased Amount and any unpaid fees due shall become due and payable in full immediately; (b) Purchaser may enforce the provisions of the Transaction Documents against the Seller and Guarantor(s); (c) Purchaser may enforce its security interest in the Collateral, Additional Collateral and the Cross Collateral; (d) Purchaser may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-

**Exhibit 4**

DocuSign Envelope ID: 8815D9B1-ED8B-4616-A15D-6DFA1AFF031D

generated check drawn on Seller's bank account or otherwise; (e) Purchaser may direct any payment or credit card processor to deposit any amounts due to Seller directly to Purchaser; (f) Purchaser may exercise its rights under the Assignment of Lease set forth in Section 2.12; (g) Purchaser may exercise the Power of Attorney set forth in Section 1.7.

All rights, powers and remedies of Purchaser in connection with this Agreement may be exercised at any time by Purchaser after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. Seller and Guarantor acknowledge and agree that there may be no adequate remedy at law with respect to a breach of the Transaction Documents. Accordingly, Seller and Guarantor agree that Purchaser shall have the right, in addition to any other rights and remedies existing in Purchaser's favor at law or in equity, to enforce Purchaser's rights and obligations under the Transaction Documents not only by an action or actions for damages, but also for an action or actions for specific performance, injunctive and/or other equitable relief without posting of a bond or other security. To the extent authorized by applicable law, Seller and Guarantor hereby agree to toll or waive any relevant statute of limitations in respect of any claims arising under, and/or relating to the Transaction Documents. This section shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**3.3 Costs.** Seller shall pay to Purchaser all reasonable costs associated with (a) a breach by Seller of the Transaction Documents and the enforcement thereof, and (b) the enforcement of Purchaser's remedies set forth herein, including but not limited to (i) expenses, court costs and attorneys' fees of twenty-five percent (25%) of the total amount due to Purchaser or the actual attorney fees incurred, whichever is greater, and (ii) default interest on the total amount due to Purchaser accruing from the date of default at the rate of ten percent (10%) per annum or such other amount as allowed by law.

**3.4 Required Notifications.** Seller is required to give Purchaser fourteen (14) days' prior written notice of: (a) any change in control of the Seller or the sale, transfer or assignment of all or substantially all of the Seller's assets or equity interests; and (b) the suspension, dissolution or termination of its business.

**3.5. Servicer and Default Fees.** Seller shall pay certain fees for services related to origination and servicing of the Transaction Documents as detailed in the Purchase Agreement. Upon the occurrence of any Event of Default, Seller and Guarantor shall be liable for a default fee in the amount stated in the Purchase Agreement, payable on demand in addition to any other fees or charges due under the Transaction Documents.

## IV. MISCELLANEOUS

**4.1 Modifications; Amendment.** No modification, amendment, waiver or consent of any provision of the Transaction Documents shall be effective unless the same shall be in writing and signed by Purchaser. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.2 Purchaser acting as Agent.** Purchaser has entered into the Transaction Documents as agent (in such capacity, "Agent") for itself and one or more third parties as "co-investors" or "co-purchasers" (each a "Principal"). Agent and each Principal have elected to treat the transaction consummated under the Transaction Documents (the "Transaction") as a single transaction on behalf of separate Principals, and Agent hereby certifies that the portion of the Transaction allocable to the account of each of the Principals (the "Portion") for which it is acting (to the extent that any such Transaction is allocable to the account of more than one Principal) is set forth in one or more addenda to the Transaction Documents, which may be provided to Seller upon request.

All references to "Purchaser" "Seller" or "Guarantor," as the case may be, in the Transaction Documents shall be subject to the provisions of this section and shall be construed to reflect that (i) each Principal shall have, in connection with the Transaction entered into by the Agent on its behalf, all of the rights, responsibilities, privileges and obligations of a "Purchaser" directly entering into such Transaction with the other parties under each of the Transaction Documents and (ii) Agent's Principals have designated Agent (acting directly or through the Authorized Subservicing Agent) as their sole agents for performance of Purchaser's obligations to Seller and for receipt of performance by Seller of its obligations to Purchaser in connection with the Transaction (including, among other things, as Agent for each Principal in connection with transfers of cash or other property and as agent for giving and receiving all notices under the Transaction Documents). Both Agent and its Principals shall be deemed "parties" to the Transaction Documents and all references to a "party" or "either party" in any Transaction Document shall be deemed revised accordingly.

The parties hereto acknowledge and agree that any assignment, pledge and/or grant to Purchaser by the Seller or a Performance Guarantor of a security interest in and to any property and assets (including the Collateral and the Additional Collateral) pursuant to any of the applicable Transaction Documents to secure the payment and/or performance of any of their respective and/or joint obligations, shall be deemed to have been made to the Purchaser for and on behalf of itself and any other Principal. Purchaser hereby agrees to hold all Collateral and Additional Collateral hereafter delivered to it pursuant to the Transaction Documents, for itself and for the benefit of the Principals, on and subject to the terms and conditions set forth in the Transaction Documents. In its capacity, the Agent and Sub-Servicing Agent are each a "representative" of each of the Principals within the meaning of the term "secured party" as defined in the UCC. In addition to the representations and warranties set forth in the Transaction Documents, Agent hereby makes the following representations and warranties, which shall continue during the term of any Transaction: Principal has duly authorized Agent to execute and deliver the Transaction Documents on its behalf, has the power to so authorize Agent and to enter into the Transaction contemplated by the Transaction Documents and to perform the obligations of Purchaser, and has taken all necessary action to authorize such execution and

**Exhibit 4**

delivery by Agent and such performance by it. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.3 Sub-Servicing Agent.** Purchaser may contract with one or more general agents to service the Transaction Documents (the "Sub-Servicing Agent") that will provide customer service, treasury, administrative, bookkeeping, reporting, collections, and support services, but not limited to, background checks, credit checks, general underwriting review, filing UCC-1 security interests and any other UCC documentation, for the Purchaser. Seller and Guarantor(s) acknowledge and agree that Purchaser has granted Sub-Servicing Agent all rights and authority as its general agent to take any and all actions to enforce the Purchase Agreement, through legal actions in the name of the Purchaser or otherwise, and to assert and/or defend against any and all claims arising from or relating to the Purchase Agreement. Any and all authorizations and rights granted to Purchaser under the Transaction Documents are hereby granted to Sub-Servicing Agent, as servicer and general agent of Purchaser. In no event will the Sub-Servicing Agent be liable for any claims made against the Purchaser or under any legal theory for lost profits, lost revenues, lost business opportunity, exemplary, punitive, actual, special, incidental, indirect or consequential damages, each of which is waived by the Seller and Guarantor(s). This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.4 Notices.** All notices, requests, consent, demands and other communications under the Transaction Documents and any addendum shall be delivered by ordinary mail to the respective parties at the addresses set forth in the Purchase Agreement and shall become effective upon delivery. The Parties hereto may also send such notices, requests, consent, demands and other communications via facsimile or electronic mail at such numbers and email addresses communicated by the parties hereto in writing or as reflected in the records of the Sub-Servicing Agent. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction.** Seller and Guarantor agree that any suit, action or proceeding to enforce or arising out of or relating to this Agreement shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "Acceptable Forums"), and Seller and Guarantor waive personal service of process. Seller and Guarantor agree that the Acceptable Forums are convenient to them, submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. In the event a legal proceeding concerning this Agreement is initiated in any other forum, Seller and Guarantor waive any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum, or to dismiss the action on the grounds of *forum non conveniens*.

This Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with Virginia law (to the extent not preempted by federal law) without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for under this Agreement will be governed by the laws of the Commonwealth of Virginia. Seller and Guarantor understand and agree that (i) Purchaser and/or Kapitus Servicing are located in Virginia, (ii) all final credit decisions are made from Virginia, (iii) the Agreement is made in Virginia (that is, no binding contract will be formed until Seller's signed Agreement is received and accepted in Virginia) and (iv) Seller's delivery of Receipts are not accepted until received in Virginia. This section shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.6. Counterparts; Facsimile and PDF Acceptance.** Each of the Transaction Documents may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original of each such Transaction Document, and all such counterparts for the respective Transaction Document shall constitute one and the same such Transaction Document. For purposes of the execution of each of the Transaction Documents, electronically transmitted PDFs, facsimile copies of signatures, or electronically transmitted copies of signatures complying with the US Federal ESIGN Act of 2000 (e.g. www.docusign.com) shall be treated as original signatures for all purposes. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.7 Waiver of Remedies.** No failure on the part of Purchaser to exercise, and no delay in exercising, any right under the Transaction Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right under the Transaction Documents preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.8 Solicitations.** Seller and Guarantor authorize the Purchaser Parties to communicate with, solicit and/or market to Seller and Guarantor via regular mail, telephone, electronic mail and facsimile in connection with the provision of goods or services by the Purchaser Parties, their affiliates or any third party that the Purchaser Parties share, transfer, exchange, disclose or provide information with and will hold the Purchaser Parties harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**Exhibit 4**

DocuSign Envelope ID: 8815D9B1-ED8B-4616-A15D-6DFA1AFF031D

**4.9 Survival of Representation, etc.** Except as otherwise provided herein, all representations, warranties and covenants herein, including those in the Security Agreement and the Guaranty shall survive the execution and delivery of the Purchase Agreement and shall continue in full force until all obligations under the Purchase Agreement shall have been satisfied in full and the Purchase Agreement shall have terminated. Notwithstanding any terms to the contrary contained herein: (i) the Security Agreement and the Guaranty shall survive, in their entirety, the delivery of the Purchased Amount and the termination of the Purchase Agreement; and (ii) in the event that Purchaser must return any amount paid by Seller, Guarantor, any other guarantor, entity or person with respect to the obligations arising under the Transaction Documents, including without limitation, arising from or relating to, Seller, Guarantor, any other guarantor, entity or person becoming subject to a proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law), and/or any other legal proceeding or alternative dispute resolution proceeding, all representations, warranties and covenants and other obligations under the Transaction Documents and any addendum thereof (if any) shall remain in full force and effect and Seller and Guarantor shall be obligated for any such amounts repaid, as well attorneys' fees, costs and interest in connection with such proceeding. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.10 Severability, Savings.** In case any of the provisions in the Transaction Documents are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained therein shall not in any way be affected or impaired and the Transaction Documents shall be construed as if such provision had not been included. If any provisions of these Sale Terms and Conditions are in conflict with any other agreement to which any parties are subject, the provisions of the Purchase Agreement shall control. Should any provision of the Transaction Documents require judicial interpretation, the court interpreting or construing the provision shall not apply the rule of construction that a document is to be construed more strictly against one Party. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.11 Entire Agreement.** The Transaction Documents embody the entire agreement between Seller, Guarantor(s), and Purchaser and supersede all prior agreements and understandings relating to the subject matter hereof. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.12 JURY TRIAL WAIVER.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTION DOCUMENTS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS. THIS PROVISION SHALL SURVIVE, IN ITS ENTIRETY, THE DELIVERY OF THE RECEIPTS PURCHASED AND THE TERMINATION OF THE PURCHASE AGREEMENT.

**4.13 CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. TO THE EXTENT A PARTY IS PERMITTED TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION, THE PARTIES AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION. THIS PROVISION IS A MATERIAL INDUCEMENT FOR PURCHASER TO ENTER INTO THIS AGREEMENT. THIS PROVISION SHALL SURVIVE, IN ITS ENTIRETY, THE DELIVERY OF THE RECEIPTS PURCHASED AND THE TERMINATION OF THE PURCHASE AGREEMENT.

**4.14 Successors; Assigns; Amendment.** Purchaser and any Principal may assign, transfer or sell its right to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part. Purchaser reserves the rights to sell or assign this Agreement with or without prior written notice to Seller. Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Purchaser which consent may be withheld in Purchaser's sole discretion. The Transaction Documents shall be binding upon and inure to the benefit of the heirs, executors, trustees, administrators, legal representatives, successors, transferees and assigns of the Parties. This provision shall survive, in its entirety, the delivery of the Receipts purchased and the termination of the Purchase Agreement.

**4.15 ARBITRATION.** *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* A SEPARATE AGREEMENT BETWEEN THE PARTIES PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT.

**Signatures on Next Page**

**Exhibit 4**

DocuSign Envelope ID: 8815D9B1-ED8B-4616-A15D-6DFA1AFF031D

SELLER AND GUARANTOR ACKNOWLEDGE AND AGREE TO BE BOUND BY THE SALE TERMS AND CONDITIONS. THE TERMS, DEFINITIONS, CONDITIONS, AND INFORMATION SET FORTH IN THE "PURCHASE AGREEMENT", "SECURITY AGREEMENT", AND THE "GUARANTY" (AS APPLICABLE) ARE HEREBY SUBJECT TO AND MADE A PART OF THE SALE TERMS AND CONDITIONS. CAPITALIZED TERMS NOT DEFINED IN THE SALE TERMS AND CONDITIONS, SHALL HAVE THE MEANING SET FORTH IN THE "PURCHASE AGREEMENT," "SECURITY AGREEMENT" OR "GUARANTY," AS APPLICABLE.

**SELLER**
By  Thomas Till, Owner
    (Print Name and Title)                    [DocuSigned by: 863CDE56AA6946B...] (Signature)

**GUARANTOR**
By  Thomas Till
    (Print Name)                              [DocuSigned by: 863CDE56AA6946B...] (Signature)

**GUARANTOR**
By  N/A
    (Print Name)                              (Signature)

**GUARANTOR**
By  N/A
    (Print Name)                              (Signature)

USE OF PROCEEDS CERTIFICATION

*This Use of Proceeds Certification is part of (and incorporated by reference into) the Purchase Agreement.*

Each signatory below, on behalf of each Seller or Guarantor, hereby certifies the following to the Purchaser:

1. The entirety of the Purchase Price will be used in the ordinary course of business.
2. The entirety of the Purchase Price will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Purchase Agreement refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law) and/or any other legal proceeding or alternative dispute resolution proceeding.

**SELLER**
By  Thomas Till, Owner
    (Print Name and Title)                    [DocuSigned by: 863CDE56AA6946B...] (Signature)

**GUARANTOR**
By  Thomas Till
    (Print Name)                              [DocuSigned by: 863CDE56AA6946B...] (Signature)

**GUARANTOR**
By  N/A
    (Print Name)                              (Signature)

**GUARANTOR**
By  N/A
    (Print Name)                              (Signature)

**Exhibit 4**